[No. B243469. Second Dist., Div. Five. Feb. 13, 2013.]

In re the Marriage of E. and STEPHEN P.
E.P., Respondent, v.
STEPHEN P., Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of Factual and Procedural Background, parts B., C., D., E. and F.

**COUNSEL**

Christopher Blake, under appointment by the Court of Appeal, for Appellant.

Noelle M. Halaby for Respondent.

Opinion

MOSK, J.—

## INTRODUCTION

Stephen P. (father), the adoptive father of S.P. (the minor), appeals from the trial court's order granting the petition of the adoptive mother of the minor, E.P. (mother), to terminate father's parental rights to the minor under Family Code section 7827[1] (mental disability). According to father, the trial court committed per se reversible error when it failed to order and consider an investigation by a licensed clinical social worker under section 7850 and a report by that social worker under section 7851. Father also contends that because it is only in rare and exceptional cases that a trial court should terminate parental rights when no adoption is pending, the trial court erred by terminating parental rights here as no adoption was pending. Father further argues that the trial court erred by failing to consider less drastic alternatives to terminating his parental rights.

We hold that father forfeited his contention concerning the application of sections 7850 and 7851 by failing to raise the issue in the trial court; there is an insufficient showing of ineffective assistance of counsel in connection with such forfeiture; in any event, father failed to demonstrate that sections 7850 and 7851 applied to mother's petition; and if they did apply, father failed to show that he suffered prejudice from the trial court's failure to order and consider the investigation and report required under those sections. We further hold that substantial evidence supports the trial court's finding that terminating father's parental rights was in the best interests of the minor, as well as the trial court's implicit conclusion that no less drastic alternatives to termination were reasonably available. We therefore affirm the order terminating father's parental rights.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Summary*

Mother and father married and adopted the minor. Prior to the marriage, father suffered from mental illness, but took medication that allowed him to function normally. Shortly after mother and father adopted the minor, father

---

[1] All further statutory references are to the Family Code unless otherwise indicated.

stopped taking his medication. As he failed to take medication, his mental condition deteriorated to the point that it seriously impacted his relationship with mother and the minor and resulted in restraining orders against him being issued. On one occasion, father appeared unannounced at mother's home and tried to force her and the minor into his vehicle; in the resulting struggle, the minor fell from mother's arms and fractured his skull. Mother ultimately filed a petition for dissolution of the marriage and was awarded sole custody of the minor.

Mother also filed an initial petition to terminate father's parental rights pursuant to section 7827.[2] In response to the petition, the trial court appointed a psychologist and a psychiatrist to examine father and prepare reports with their diagnoses and prognoses. According to mother, after she and the minor moved out of state, father suffered a criminal conviction for the attempted murder of his mother. Nevertheless, mother later stipulated with father to dismiss her petition to terminate father's parental rights in exchange for father's agreement to undergo treatment and take medication for his mental illness. Mother then allowed father to reestablish a relationship with the minor, who was in therapy.

Shortly after entering into the stipulation, father again refused to take his medication and his mental condition began to deteriorate, leading mother to reinstate her petition to terminate father's parental rights. After the filing of the reinstated petition to terminate parental rights, the trial court appointed a psychologist and two psychiatrists to evaluate father's mental condition. All of the experts reported that father was mentally disabled within the meaning of section 7827, and that if he continued to refuse to comply with medical treatment recommendations, he would remain disabled for the foreseeable future. At trial on the reinstated petition, the testimony of the experts was

---

[2] Section 7827 provides in pertinent part: "(a) 'Mentally disabled' as used in this section means that a parent or parents suffer a mental incapacity or disorder that renders the parent or parents unable to care for and control the child adequately. [¶] (b) A proceeding under this part may be brought where the child is one whose parent or parents are mentally disabled and are likely to remain so in the foreseeable future. [¶] (c) Except as provided in subdivision (d), the evidence of any two experts, each of whom shall be a physician and surgeon, certified either by the American Board of Psychiatry and Neurology or under Section 6750 of the Welfare and Institutions Code, a licensed psychologist who has a doctoral degree in psychology and at least five years of postgraduate experience in the diagnosis and treatment of emotional and mental disorders, is required to support a finding under this section. In addition to this requirement, the court shall have the discretion to call a licensed marriage and family therapist, or a licensed clinical social worker, either of whom shall have at least five years of relevant postlicensure experience, in circumstances where the court determines that this testimony is in the best interest of the child and is warranted by the circumstances of the particular family or parenting issues involved."

consistent with their reports. The trial court concluded that "section 7827 applies to [father]. All experts agree that the best interest of the [minor] is that the parental rights of [father] be terminated. . . . Therefore, the court finds that section 7827 of the Family Code applies to [father] and [father's] parental rights are terminated."

B.–F.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISCUSSION

### A. *Standard of Review*

▮ In an analogous case in which parental rights were terminated under, inter alia, Civil Code former section 232, subdivision (a)(2),[4] the court stated, "The right of parents to raise their own children is so fundamental that termination of that right by the courts must be viewed as a drastic remedy to be applied only in extreme cases. [Citation.] Accordingly, there must be clear and convincing evidence of the facts necessary to declare minors free from the custody and control of their parents under Civil Code section 232. [Citation.]" (*In re Victoria M., supra*, 207 Cal.App.3d at p. 1326.)

The clear and convincing standard, however, applies in the trial court and is not a standard for appellate review. (*Crail v. Blakely* (1973) 8 Cal.3d 744, 750 [106 Cal.Rptr. 187, 505 P.2d 1027].) " ' "The sufficiency of evidence to establish a given fact, where the law requires proof of the fact to be clear and convincing, is primarily a question for the trial court to determine, and if there is substantial evidence to support its conclusion, the determination is not open to review on appeal." [Citations.]' [Citation.] Thus, on appeal from a judgment required to be based upon clear and convincing evidence, 'the clear and convincing test disappears . . . [and] the usual rule of conflicting evidence is applied, giving full effect to the respondent's evidence, however slight, and

---

*See footnote, *ante*, page 983.

[4] Civil Code former section 232, subdivision (a)(2) permitted a trial court to terminate parental rights if the court found by clear and convincing evidence that (1) the child had been neglected or cruelly treated, (2) the child had been a dependent of the juvenile court under Welfare and Institutions Code section 300, and (3) the child had been out of the parents' custody for one year. (*In re Victoria M.* (1989) 207 Cal.App.3d 1317, 1321 [255 Cal.Rptr. 498].) Section 7822 continued Civil Code former section 232, subdivision (a)(2) without substantial change. (Cal. Law Revision Com. com., Deering's Ann. Fam. Code (2006 ed.) foll. § 7822, p. 53.)

disregarding the appellant's evidence, however strong.' [Citation.]" (*In re Angelique C.* (2003) 113 Cal.App.4th 509, 519 [6 Cal.Rptr.3d 395].) We review the evidence in the light most favorable to the trial court's judgment, and when there is a conflict in the evidence, we draw all reasonable inferences in support of the trial court's finding. (*In re Brison C.* (2000) 81 Cal.App.4th 1373, 1378–1379 [97 Cal.Rptr.2d 746].) When drawing inferences, we do so only as to those that uphold the decision of the trial court. (*Paine v. San Bernardino Valley Traction Co.* (1904) 143 Cal. 654, 656 [77 P. 659]; see *Lake v. Reed* (1997) 16 Cal.4th 448, 457 [65 Cal.Rptr.2d 860, 940 P.2d 311].) We review de novo the legal issues concerning statutory construction. (See *Regents of University of California v. Superior Court* (1999) 20 Cal.4th 509, 531 [85 Cal.Rptr.2d 257, 976 P.2d 808].)

B. *Failure to Order and Consider Investigation and Report Under Sections 7850 and 7851*

Father contends that sections 7850[5] and 7851[6] applied to mother's petition to terminate parental rights and that those sections required the trial court to order a licensed clinical social worker to conduct an investigation and prepare a report for the trial court's consideration. Because the trial court failed to order an investigation and a report by a licensed clinical social worker as required by sections 7850 and 7851, father maintains that the court committed error that was reversible per se.

---

[5] Section 7850 provides as follows: "Upon the filing of a petition under Section 7841 [to terminate parental rights], the clerk of the court shall, in accordance with the direction of the court, immediately notify the juvenile probation officer, qualified court investigator, licensed clinical social worker, licensed marriage and family therapist, or the county department designated by the board of supervisors to administer the public social services program, who shall immediately investigate the circumstances of the child and the circumstances which are alleged to bring the child within any of the provisions of Chapter 2 (commencing with Section 7820)."

[6] Section 7851 provides as follows: "(a) The juvenile probation officer, qualified court investigator, licensed clinical social worker, licensed marriage and family therapist, or the county department shall render to the court a written report of the investigation with a recommendation of the proper disposition to be made in the proceeding in the best interest of the child. [¶] (b) The report shall include all of the following: [¶] (1) A statement that the person making the report explained to the child the nature of the proceeding to end parental custody and control. [¶] (2) A statement of the child's feelings and thoughts concerning the pending proceeding. [¶] (3) A statement of the child's attitude towards the child's parent or parents and particularly whether or not the child would prefer living with his or her parent or parents. [¶] (4) A statement that the child was informed of the child's right to attend the hearing on the petition and the child's feelings concerning attending the hearing. [¶] (c) If the age, or the physical, emotional, or other condition of the child precludes the child's meaningful response to the explanations, inquiries, and information required by subdivision (b), a description of the condition shall satisfy the requirement of that subdivision. [¶] (d) The court shall receive the report in evidence and shall read and consider its contents in rendering the court's judgment."

## 1. *Forfeiture*

Because father failed to raise any issue in the trial court concerning either a section 7850 investigation or a section 7851 report, we asked the parties to submit letter briefs on whether father forfeited on appeal his contentions premised on those sections. We conclude that father forfeited on appeal his contentions under sections 7850 and 7851.

■ The Supreme Court in *Keener v. Jeld-Wen, Inc.* (2009) 46 Cal.4th 247, 264–265 [92 Cal.Rptr.3d 862, 206 P.3d 403] explained the basis for the forfeiture rule as follows: "The forfeiture rule generally applies in all civil and criminal proceedings. [Citations.] The rule is designed to advance efficiency and deter gamesmanship. As we explained in *People v. Simon* (2001) 25 Cal.4th 1082 [108 Cal.Rptr.2d 385, 25 P.3d 598] . . . : ' " ' "The purpose of the general doctrine of waiver [or forfeiture] is to encourage a defendant to bring errors to the attention of the trial court, so that they may be corrected or avoided and a fair trial had . . . ." ' [Citation.] ' "No procedural principle is more familiar to this Court than that a *constitutional* right," or a right of any other sort, "may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." . . .' [Citation.] [¶] 'The rationale for this rule was aptly explained in *Sommer v. Martin* (1921) 55 Cal.App. 603 at page 610 [204 P. 33] . . . : " 'In the hurry of the trial many things may be, and are, overlooked which would readily have been rectified had attention been called to them. The law casts upon the party the duty of looking after his legal rights and of calling the judge's attention to any infringement of them. If any other rule were to obtain, the party would in most cases be careful to be silent as to his objections until it would be too late to obviate them, and the result would be that few judgments would stand the test of an appeal.' " ' [Citation.]" (Fn. omitted; [citations].)' [Citation.]"

Father contends that the social worker's investigation and report under sections 7850 and 7851 are not subject to "waiver"[7] because they are jurisdictional, i.e., a trial court is not empowered to terminate parental rights under the Family Code unless it complies with the mandates of those sections. We disagree.

---

[7] "As the United States Supreme Court has clarified, the correct term is 'forfeiture' rather than 'waiver,' because the former term refers to a failure to object or to invoke a right, whereas the latter term conveys an express relinquishment of a right or privilege. [Citations.] As a practical matter, the two terms on occasion have been used interchangeably. [Citations.]" (*In re Sheena K.* (2007) 40 Cal.4th 875, 880, fn. 1 [55 Cal.Rptr.3d 716, 153 P.3d 282].) Because the issue is whether father's failure to raise a contention in the trial court precludes him from raising it for the first time on appeal, we use the term "forfeiture" in analyzing the issue.

■ The Supreme Court in *In re Marriage of Goddard* (2004) 33 Cal.4th 49, 56 [14 Cal.Rptr.3d 50, 90 P.3d 1209] (*Goddard*) noted, inter alia, that most procedural errors are not jurisdictional. The court said, "[J]urisdictional errors can be of two types. A court can lack fundamental authority over the subject matter, question presented, or party, making its judgment void, or it can merely act in excess of its jurisdiction or defined power, rendering the judgment voidable. [Citations.] . . . [¶] . . . [*M*]*ost procedural errors are not jurisdictional.* [Citations.] Once a court has established its power to hear a case, it may make errors with respect to areas of procedure, pleading, evidence, and substantive law. [Citations.]" (Italics added.) In *Goddard*, the Supreme Court held that Code of Civil Procedure section 594, subdivision (b)—requiring a party who serves the requisite notice of trial to introduce competent evidence of that service at a default prove-up trial—was not jurisdictional and therefore was subject to a harmless error analysis. (33 Cal.4th at pp. 52, 58.)

■ The investigation and report under sections 7850 and 7851 are procedural and evidentiary requirements, much like the evidentiary statute at issue in *Goddard, supra,* 33 Cal.4th 49. Therefore, those provisions are not jurisdictional in either sense described above, and, as a result, we conclude that they are subject to forfeiture.

In this case, the trial court ordered examinations by and considered reports from two psychiatrists and a psychologist. It also appointed separate counsel for the minor and father, as well as a guardian ad litem for father. At no point, however, did father's counsel suggest or imply that an additional investigation and a report from a licensed clinical social worker be ordered, much less suggest that such an investigation and a report were mandatory under sections 7850 and 7851. Had father's counsel requested an investigation and a report, both the trial court and mother's counsel would have had an opportunity to consider and respond to father's request. Because father failed to afford the trial court and mother's counsel that opportunity, he forfeited any issue under sections 7850 and 7851 on appeal.

■ In his letter brief, father also contends that if we conclude that he forfeited his contentions under sections 7850 and 7851, then he received ineffective assistance of counsel. But father concedes that such a claim is not cognizable on appeal unless the record affirmatively establishes the elements of that claim, citing *In re Daisy D.* (2006) 144 Cal.App.4th 287, 292–293 [50 Cal.Rptr.3d 242] (to prevail on a claim of ineffective assistance, appellant

must show both that counsel's representation fell below prevailing professional norms and that in the absence of counsel's failings, a more favorable result was reasonably probable; unless the record affirmatively establishes ineffective assistance, the appellate court must affirm judgment). The record on appeal does not establish that counsel's conduct fell below prevailing professional norms. The record does not evidence whether there was a satisfactory explanation for counsel's failure to raise the investigation and report issue under sections 7850 and 7851. Perhaps father's counsel concluded that the reports and testimony of the three medical experts were sufficient and that an additional report from a licensed clinical social worker would be cumulative or otherwise not helpful. Moreover, as we hold *post*, sections 7850 and 7851 were not applicable to mother's petition in any event.

### 2. *Applicability of Sections 7850 and 7851 to Mother's Petition Under Section 7827*

■ Even if father had not forfeited his contentions under sections 7850 and 7851, those sections do not apply to mother's petition, which was brought under section 7827.[8] Section 7827 empowers a trial court to terminate parental rights when the parent's mental disability renders him or her unable to care for and control his or her child and the disability is likely to remain so in the foreseeable future. Unlike the other sections of the Family Code that provide for termination of parental rights under various circumstances (§§ 7822–7826),[9] section 7827 is the only provision that specifies that a trial court *must* take expert evidence from two psychiatrists or psychologists and that the trial court *may*, in its sound discretion, take testimony from, inter alia, a licensed clinical social worker. Section 7827 does not mention section 7850 or 7851, which make an investigation and a report by a licensed clinical social worker mandatory generally in ruling on a petition to terminate parental rights under the Family Code. Those sections focus on the child's "circumstances" (§ 7850) and the child's feelings and attitudes (§ 7851), while section 7827 focuses instead on the mental condition of the parent and his or her capacity to care for the child. This suggests that the social worker requirement applies to proceedings under provisions other than section 7827.

---

[8] For the pertinent text of section 7827, see footnote 2, *ante*.

[9] Section 7822 authorizes a petition to terminate parental rights when a child has been abandoned by his or her parent or parents; section 7823 authorizes such a petition when a child has been neglected or cruelly treated by his or her parents; section 7824 authorizes such a petition when a child's parent or parents suffer a disability because of alcohol or controlled substances; section 7825 authorizes such a petition when a child's parent or parents have been convicted of a felony of such a nature so as to prove the unfitness of the parent or parents; and section 7826 authorizes such a petition when a child's parent or parents have been declared by a court of competent jurisdiction to be developmentally disabled or mentally ill.

■ In addition, although section 7827 allows a trial court to consider testimony from a licensed clinical social worker, it expressly provides that such testimony is a matter of discretion, thereby indicating that section 7827 creates an exception to the general rule mandating a report from a licensed clinical social worker if the ground for terminating parental rights is the mental disability of the parent. When a mental disability is the focus of the trial court's inquiry, the Legislature required testimony from two psychiatrists or psychologists, but made testimony from a licensed clinical social worker discretionary. In view of the distinguishing features of section 7827, we conclude that the mandatory requirements of an investigation and a report by a licensed clinical social worker under sections 7850 and 7851 were not applicable to mother's petition. If we were to read those mandatory requirements into section 7827, the language in section 7827 concerning the discretionary testimony of a licensed clinical social worker would be either conflicting or superfluous.

### 3. *Prejudice*

Even if sections 7850 and 7851 applied to mother's petition, father has failed to demonstrate how the absence of a licensed clinical social worker's investigation and report prejudiced him in this case. Instead, he argues that the trial court's failure to order such an investigation and report was legal error that is reversible per se. But the two cases upon which father relies—*In re Linda W.* (1989) 209 Cal.App.3d 222, 227 [257 Cal.Rptr. 52] and *Neumann v. Melgar* (2004) 121 Cal.App.4th 152, 164–165 [16 Cal.Rptr.3d 754]—do not support his reversible per se contention. *Linda W.* makes no mention of whether the error in that case was reversible per se, and the court in *Neumann* expressly concluded that the "failure to consider the evaluator's [section 7851] report [in that case] was . . . *prejudicial* error." (*Neumann v. Melgar, supra*, 121 Cal.App.4th at p. 169, italics added.) Thus, the procedural and evidentiary errors of which father complains—failing to order and consider a section 7850 investigation and a section 7851 report—are subject to a harmless error analysis.

"[T]he presumption in the California Constitution is that the 'improper admission or rejection of evidence . . . or . . . any error as to any matter of procedure,' is subject to harmless error analysis and must have resulted in a 'miscarriage of justice' in order for the judgment to be set aside. (Cal. Const., art. VI, § 13.) Code of Civil Procedure section 475 contains similar language: 'The court must, in every stage of an action, disregard any error, improper ruling, instruction, or defect, in the pleadings or proceedings which, in the

opinion of the court, does not affect the substantial rights of the parties.' " (*Goddard, supra,* 33 Cal.4th at pp. 56–57.) Thus, for a nonjurisdictional error to result in reversal, there must be a reasonable probability of a different result had the error not occurred. (*Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 983 [67 Cal.Rptr.2d 16, 941 P.2d 1203]; *Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 570 [34 Cal.Rptr.2d 607, 882 P.2d 298].)

Because father has failed to demonstrate how he was prejudiced by the trial court's failure to order and consider a section 7850 investigation and a section 7851 report, he has not shown reversible error. Moreover, based on the evidence of father's mental condition, including mother's testimony and the reports and testimony of the experts, there was no reasonable probability that father would have obtained a different result if the trial court had also considered a licensed clinical social worker's investigation and report.

### C.  *Substantial Evidence*

Instead of focusing on the applicable standard of review—the substantial evidence standard—father makes policy-based arguments to the effect that termination of parental rights generally must be accompanied by adoption and that public policy disfavors terminating parental rights in cases such as this in which no adoption was contemplated. Even if father's public policy contentions are correct, he nevertheless concedes that parental rights can be terminated, even if no adoption is contemplated, albeit, he says, only in rare or exceptional circumstances. Thus, the question in this case remains whether there was substantial evidence to support the factual findings underlying the trial court's order terminating parental rights.

Applying the substantial evidence test to the evidentiary record, we conclude that the trial court's findings were factually supported. Under section 7827, the trial court was required to find that father was mentally disabled— unable to care for and control the minor—and that his disability was likely to remain so in the foreseeable future. The trial court made both required findings, and father does not appear to contest the sufficiency of the evidence as to either of those findings.

■  Instead, father suggests that the trial court failed to make specific findings as to whether, notwithstanding father's disability, termination of his parental rights was in the minor's best interests.[10] The arguments of counsel

---

[10] The minor advocated for the termination of father's parental rights in the trial court, and he does not join in father's appeal.

and the trial court's oral pronouncement of its ruling, however, show that the trial court considered the minor's best interests and concluded that they would best be served by termination of father's rights. It seems axiomatic that if father is mentally disabled so that he is unable to care for or control the child and that this disability would persist for the foreseeable future, the continuation of his parental rights would not be in the child's best interests. As the trial court observed, the minor deserved the stability that would flow from a termination of father's rights, as contrasted with the instability and risk of harm that the minor experienced over the years as father came into and then went out of the minor's life. The trial court further found that it would be detrimental to the minor for father to continue to be in the minor's life and that it was "extremely likely" that father's mental disability would remain for the foreseeable future. Each of those findings was supported by evidence that was reasonable, credible, and of solid value, such that a reasonable trier of fact could conclude based thereon that termination of parental rights was appropriate under the circumstances of this case, regardless of whether an adoption was pending. There was substantial evidence demonstrating that this was, as the trial court concluded, the type of "grave" case justifying termination of parental rights.

### D. *Less Drastic Alternatives*

Father's final contention is that the trial court was required to make express findings that no less drastic alternative to termination of parental rights was available. According to father, because the trial court failed to consider less drastic alternatives, the order terminating parental rights must be reversed.

■ In *In re Cody W.* (1994) 31 Cal.App.4th 221, 228–229 [36 Cal.Rptr.2d 848], the court explained the evolution of the "least detrimental alternative" concept in the context of terminating parental rights due to the mental disability of a parent. The court said the concept developed at a time when parental rights were terminated immediately and when the current rehabilitation and reunification services were not available. The court quoted from *In re David B.* (1979) 91 Cal.App.3d 184, 196 [154 Cal.Rptr. 63] as follows: " '[T]he judge must carefully explore all reasonable alternatives to severing the parent relationship such as child protective services and temporary foster home care pending efforts to rehabilitate the parent. These alternatives should be employed unless they would result in serious psychological harm to the child. However, if the court determines that available medical and social resources are inadequate to rehabilitate the parent to a level where he or she

will be able to assume responsibility for the child, then it becomes inimical to the child's welfare to delay efforts to seek permanent adoptive placement.' " (*In re Cody W., supra,* 31 Cal.App.4th at p. 229.)

The court in *In re Cody W., supra,* 31 Cal.App.4th 221 further explained that "*In re Angelia P.* (1981) 28 Cal.3d 908 [171 Cal.Rptr. 637, 623 P.2d 198] became a turning point—intentional or not—in the least detrimental alternative analysis. . . . [A]s in the earlier Court of Appeal decisions, the Supreme Court made it clear that 'less severe alternatives' meant no more than giving birth parents the opportunity to rehabilitate themselves and reunite with their families via court-ordered services before ordering the termination of their rights." (*Id.* at p. 229.)

Father does not argue that the trial court should have considered further medical or social services for him to rehabilitate and reunify him with the minor. Instead, he suggests that the trial court should have considered preserving the status quo—i.e., sole custody of the minor vested in mother with no visitation rights for father—based on the speculative hope that father might someday comply with his required treatment and medication regimens and thereafter demonstrate his ability to reunify with the minor at some unspecified level. The trial court expressly found, however, that it was "extremely likely" that father would continue to be mentally disabled for the foreseeable future, a finding that implicitly rejected any alternative based on father's future recovery. Moreover, there was substantial evidence that supported a reasonable inference that father had been afforded fair opportunities to comply with his required medical treatment and that he repeatedly failed to do so.

Father also suggests that the trial court was required to consider father's Social Security survivor benefits, as well as his potential inheritance from his parents, as reasons for not terminating parental rights. According to father, if either he or his parents died prior to the minor reaching adulthood, the minor would be entitled to financial benefits that would be unavailable to him if father's parental rights were terminated. But, there was no evidence that would support an inference that either father or his parents were likely to die prior to the minor reaching adulthood, nor does the record contain any evidence as to the potential amounts of such survivor benefits or the inheritance. Even if a potential inheritance or benefits could be of significance, absent such evidence, the trial court was not required to consider father's speculative notions in support of his arguments for an alternative that he says would be less drastic than termination of parental rights. We conclude that there was substantial evidence supporting an implicit finding that less drastic alternatives to termination of parental rights were not available.

## DISPOSITION

The order terminating parental rights is affirmed. Each party is to bear his or her own costs on appeal.

Turner, P. J., and Kriegler, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 22, 2013, S209505.