Filed 6/6/13  In re A.M. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re A.M., a Person Coming Under the Juvenile Court Law. | |
| J.M., Petitioner and Respondent, v. L.B., Objector and Appellant. | E057573 (Super.Ct.No. RIA1100217) OPINION |

APPEAL from the Superior Court of Riverside County.  Kenneth Fernandez, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Konrad S. Lee, under appointment by the Court of Appeal, for Objector and Appellant.

Law Offices of Marie Moreno Myers, Marie Moreno Myers; and James W. Wiley for Petitioner and Respondent.

No appearance for Minor.

The family court granted J.M.'s (Stepmother) petition to free A.M., a child, from the custody and control of L.B. (Mother), who is A.M.'s mother. (Fam. Code, § 7822, subd. (a)(3).)[1] Mother contends the family court erred because substantial evidence does not support the finding she intended to abandon A.M. We affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

A.M. is a female who was born in May 2004. A.E.M. (Father) is A.M.'s father. Father met Mother in January 2003. Soon thereafter, Mother lost her job and moved into Father's home. Mother became pregnant. Mother and Father ended their relationship when A.M. was 18 months old. A.M. lived with Mother and visited Father every other weekend. Father paid $800 per month in child support for A.M., although no court orders were in place. Mother lived with her father (Grandfather).

Father met Stepmother in 2005, and they dated. Father and Stepmother began living together in 2007, they purchased a home together in Riverside, and were married in April 2009. Grandfather informed Father that Mother was not taking A.M. to school. Grandfather also told Father that he suspected Mother was abusing drugs and stealing from him. Grandfather planned to "evict" Mother from his home, which would render Mother and A.M. homeless. Father requested an emergency court hearing.

At the hearing, the court ordered Mother to submit to a drug test. Mother failed to appear for the test. At the next hearing, in October 2009, Father was granted full custody of A.M., and Mother was granted supervised visitation. Mother left

---

[1] All subsequent statutory references will be to the Family Code unless otherwise indicated.

2

Grandfather's home and resided in Murrieta from October 2009 until June 2010. Mother telephoned Father "a few times" asking to speak to A.M. unsupervised. Father and Stepmother denied Mother's request for unsupervised telephone calls. Mother sent text messages to Father asking to visit A.M. Father reminded Mother the visits needed to be supervised. Mother informed Father she did not want the visits supervised and that she did not have money to pay for a monitor. Mother stopped trying to contact A.M.

In June 2010, Mother moved to Menifee and resided with a friend. Mother was pregnant with her second daughter while living in Menifee. Mother was not allowed to stay in her friend's home after her baby was born, so Mother moved to Oregon. Mother could not stay at Grandfather's house, and her mother's house was not an option because Mother's brothers resided there and abused drugs. Mother was unable to find housing through any California agencies. Mother chose Oregon in order "to put some distance in-between [her] second daughter's father and [her]self." The father of Mother's second child physically abused Mother. Mother did not attempt to visit A.M. while living in Murrieta and Menifee because she did not have transportation.

In order to move to Oregon, Mother returned a stroller that her second daughter's father had purchased. Mother used that money to purchase a bus ticket. Upon arriving in Oregon, Mother moved into a women's crisis center. Mother resided at the center for approximately six weeks. In September 2010, Mother moved into a shelter that provided one-bedroom apartments. Mother lived at the shelter until mid-February 2011. Mother did not have to pay rent at the shelter, and she received food stamps and

3

Temporary Aid for Needy Families. In March 2011, Mother moved into a permanent residence and began paying rent. Mother received additional money via an education grant.

In July 2011, after approximately a year and a half since her last contact, Mother contacted Father to inform him that she would be traveling from Oregon to Riverside and would like to visit A.M. Father agreed to a "timeframe" for the visit. Mother also told Father she had a second child, whom she wanted A.M. to meet. Mother arrived in California on July 16, and planned to return to Oregon on July 19. Father told Mother that he already had plans to be out of town with Stepmother for the weekend, so the visit could not take place.

Mother tried to schedule the visit for Monday, while she was still in town, but Father said weekdays were difficult because he was working. Father testified that he would have permitted Mother to visit A.M. if Father had been given information about a visitation monitor. When Father asked Mother about a visitation monitor, she responded, "'I don't need one. I wouldn't hurt her.'" Mother testified that she contacted visitation monitors, but believed she needed to schedule the visitation with Father first, and then give the schedule to the monitor.

While in California, Mother filled out an "Order to Show Cause" form, in order to enforce her visitation rights. Mother gave the form to a friend, and asked the friend to file it for her because Mother needed to fly back to Oregon. The friend tried to file the form, but the clerk rejected the form because it was not properly completed. The clerk directed Mother's friend to a website where Mother could complete a new form.

4

Mother went to legal aid in Oregon to obtain assistance with the form, but was told they could not help her since it was a California form. Mother stopped working on the form.

On December 13, 2011, Mother text messaged Father to inform him that she would again be travelling from Oregon to Riverside and wanted to visit A.M. Mother had purchased gifts to give to A.M. during their visit. Father told Mother to contact his attorney to schedule the visit. Mother travelled to California. After Mother arrived in California, she contacted Father's attorney. The attorney told Mother she first needed to submit to a hair follicle drug test. Mother took the test and the results were negative.

Father blocked Mother's telephone number, so after taking the drug test Mother again contacted Father's attorney. Mother tried to schedule a visit, but the attorney informed Mother that she (the attorney) had not heard from Father. Mother called Father from a friend's telephone. Father told Mother he had spoken to his attorney and Mother "should be hearing from" the attorney. Mother did not follow-up with the attorney.

On December 16, 2011, Stepmother filed a petition to free A.M. from Mother's custody. Stepmother also filed a request to adopt A.M. Mother was served with Stepmother's petition. On December 22, Mother filed for an Order to Show Cause. Mother completed the form with the help of a family law facilitator at the Riverside courthouse. Mother testified that she never intended to abandon A.M.

The last time Mother saw A.M. was October 7, 2009. Mother has never paid child support for A.M., but that arrangement was agreed upon and appears in A.M.'s file at the Department of Social Services. Mother has never provided Father with any

5

financial assistance for A.M.  Mother has never sent letters or cards to A.M.; Mother knows Father's address.  Mother explained that she never mailed anything to A.M. because she believed Father would not give the cards, letters, or presents to A.M.

A.M. refers to Mother as "'my mother.'"  A.M. refers to Stepmother as "'mom or mommy.'"  A.M. recalled last seeing Mother when A.M. was two or three years old. A.M. did not recall receiving a card, letter, or birthday present from Mother.  A.M. wanted to be adopted by Stepmother.  The family court found Mother abandoned A.M. by leaving A.M. with Father and not providing support or communicating with the child from October 7, 2009, to December 16, 2011, with the intent to abandon A.M.  Thus, the family court freed A.M. from Mother's custody.

## DISCUSSION

Mother contends the family court erred by freeing A.M. from Mother's custody because substantial evidence does not support the finding that Mother intended to abandon A.M.  We disagree.

We apply the substantial evidence standard when reviewing a family court's ruling on a freedom from custody petition.  (*In re Adoption of Allison C.* (2008) 164 Cal.App.4th 1004, 1010.)  The trial court applies the clear and convincing evidence standard of proof; however, our review is limited to determining whether substantial evidence exists to support the family court's findings.  (*Ibid.*)

"[I]n applying this standard, we do not pass on the credibility of witnesses, resolve conflicts in the evidence, or determine the weight of the evidence.  [Citation.] We simply determine whether there is substantial evidence, believed by the trial court,

6

that supports the court's findings. [Citation.]" (*In re Marriage of Jill and Victor D.* (2010) 185 Cal.App.4th 491, 503.) "Abandonment and intent '"are questions of fact for the trial judge . . . ."' (*In re Adoption of Allison C.*, *supra*, 164 Cal.App.4th at pp. 1010-1011.)

Abandonment occurs when "[o]ne parent has left the child in the care and custody of the other parent for a period of one year without any provision for the child's support, or without communication from the parent, with the intent on the part of the parent to abandon the child." (§ 7822, subd. (a)(3).) The "failure to provide support, or failure to communicate is presumptive evidence of the intent to abandon. If the parent or parents have made only token efforts to support or communicate with the child, the court may declare the child abandoned by the parent or parents." (§ 7822, subd. (b).) "The parent need not intend to abandon the child permanently; rather, it is sufficient that the parent had the intent to abandon the child during the statutory period. [Citation.]" (*In re Amy A.* (2005) 132 Cal.App.4th 63, 68.)

In regard to communication, the evidence reflects the last time Mother communicated with A.M. was in October 2009. Mother did not visit A.M. during the nine-month period when they were both residing in Riverside County. Mother made no attempts to contact A.M., in any form, for approximately a year and a half—until July 2011. Ultimately, Mother never visited A.M., spoke to her on the telephone, or sent her written communications since the time full custody was granted to Father. Given this evidence, the family court could reasonably conclude that Mother intended to abandon A.M. because she never once exercised her court-granted visitation rights. Mother's

7

failure to ever visit A.M. or otherwise communicate with A.M. is substantial evidence of Mother's intent to abandon the child.

Mother asserts substantial evidence does not support the family court's ruling because Mother tried to contact A.M. in 2011 but was "thwarted" by Father. A parent's abandonment actions under section 7822 must be voluntary. (*In re Amy A.* (2005) 132 Cal.App.4th 63, 69.) Thus, we infer Mother is asserting her failure to communicate was not voluntary; rather, she was prevented by Father from communicating with A.M. In support of this argument, Mother points to all the evidence reflecting her attempts to visit A.M. and speak to A.M. in 2011.

Mother's argument is not persuasive because we cannot reweigh the evidence. We must look at the evidence in the light most favorable to the judgment. (*In re Marriage of Stephen P.* (2013) 213 Cal.App.4th 983, 989-990.) In this case, the record reflects Father was not trying to prevent Mother from visiting A.M.—he was only trying to prevent her from having unsupervised contact with A.M. Thus, the visits could have occurred if they were supervised, but Mother chose not to comply with the supervision requirement. For example, the record reflects Mother asked to have unsupervised telephone contact with A.M., but Father denied the request. As a second example, the record reflects Father would have allowed Mother to visit A.M. when Mother was in California in 2011, if Mother "would have provided a monitor," but Mother "never did provide [Father] with anything" concerning a monitor. Father explained, "Even when I would [ask] her, who's the monitor, she I remember one time stated, 'I don't need one. I wouldn't hurt her.'" Thus, when looking at the evidence in the light most favorable to

8

the judgment, it appears Mother chose not to visit A.M. because she did not want to comply with the supervision requirement—not due to Father's interference. As a result, we find Mother's argument to be unpersuasive.

In regard to failing to provide financial support, Mother asserts her indigence prevented her from giving child support to A.M. Mother's argument is not persuasive because we must look at the evidence in the light most favorable to the judgment, as set forth *ante*. The record reflects Mother never provided Father with financial support for A.M. Mother testified that she purchased various gifts to give to A.M., although Mother never actually gave the gifts to the child. Mother bought A.M. "a set of gold hoop earrings," a Barbie doll, "picnic sets, toys, and fun things." Given that Mother was able to purchase gold jewelry and toys for the child, her argument that she was too indigent to provide financial support is not persuasive.

Next, Mother asserts it would not be proper for the family court to base its abandonment finding on Mother's failure to provide financial support because Mother and Father agreed that Mother did not need to provide financial support. Assuming Mother is correct, the family court's decision is still supported by substantial evidence, because an intent to abandon can be based upon a failure to communicate *or* a failure to provide support. (§ 7822, subd. (a)(3); see also *In re Jay R.* (1983) 150 Cal.App.3d 251, 258 ["A petitioner under [Civil Code] section 232 need show only that the parent *either* failed to support *or* failed to communicate"; former Civ. Code, § 232 was the precursor to section 7822].) Since we have concluded *ante*, that the family court's decision is supported by substantial evidence based upon Mother's failure to communicate,

9

Mother's argument concerning financial support does not persuade us that the family court's decision was in error.

## DISPOSITION

The judgment is affirmed.  Respondent is awarded her costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
J.

We concur:

RICHLI
Acting P. J.

CODRINGTON
J.